Elaine L. COLLETT et al., Plaintiffs,

v.

SOCIALIST PEOPLES' LIBYAN ARAB JAMAHIRIYA et al., Defendants.

Civil Action No. 01–2103 (RMU).

United States District Court, District of Columbia.

March 24, 2005.

John Joseph McDermott, Hall, Estill, Hardwick, Gable, Golden & Nelson, Paul G. Gaston, Washington, DC, for Plaintiffs.

Arman Dabiri Abkenari, Washington, DC, for Defendants.

## *MEMORANDUM OPINION*

URBINA, District Judge.

### GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

This matter comes before the court on the defendants' motion to dismiss for lack of subject matter and personal jurisdiction and failure to state a claim. The plaintiffs allege that Libya, the ESO (an intelligence agency of Libya), Colonel Muammar Qadhafi (the dictator of Libya), and various unnamed officials, employees, and agents of Libya (collectively, the "defendants") provided support to a terrorist group, the Abu Nidal Organization, which kidnaped, tortured, and killed Alec Collett, a husband and father to the respective plaintiffs. Because the court awaits a potentially dispositive statement from the Executive Branch on head-of-state immunity, the court denies without prejudice the defendants' arguments for dismissal of claims against Qadhafi. As to the other defendants, the court orders discovery on whether Libya provided material support to Abu Nidal, holds that it has personal jurisdiction over Libya and the ESO, and holds that the plaintiffs state certain claims on which relief can be granted. Accordingly, the court grants in part and denies in part the defendants' motion to dismiss.

## II. BACKGROUND

### A. Factual Background

Alec Collett, a journalist and British subject, worked for the United Nations Bureau of the Associated Press on assignment with the United Nations Relief and

Works Agency in 1985. Am. Compl. ¶ 21. In March of that year, the "Revolutionary Organization of Socialist Muslims" (also known as the Abu Nidal Organization) abducted Collett in Beirut, Lebanon. *Id.* ¶¶ 17, 22.[1] While captive, Collett appeared on two videotapes to convey the demands of his captors and to send messages to his family. *Id.* ¶ 24; Defs.' Mot. to Dismiss ("Defs.' Mot.") at 16 (stating that the terrorists demanded the release of Palestinian prisoners in Great Britain).

On April 15, 1986, the United States and England attacked Libya in retaliation for a bombing in West Berlin that killed American servicemen. Am. Compl. ¶ 25. A few days after the bombing, a videotape of a hanging surfaced with a note stating that the hanged man was Alec Collett "and that he had been executed in retaliation for the United States raid on Libya." *Id.* ¶ 27. Although the videotape is of poor quality and Alec Collett's remains have not been retrieved, Collett's family accept the videotape as authentic. *Id.* ¶¶ 27–29. The plaintiffs generally claim that the money, camps, and training provided by Libya, the ESO, and Qadhafi to the Abu Nidal Organization helped bring about the various injuries to and death of Alec Collett. *Id.* ¶ 19.

### B. Procedural History

The plaintiffs filed their first complaint on October 9, 2001. On November 13, 2002, the court granted a motion to stay pending jurisdictional discovery. On May 15, 2003, the defendants moved to dismiss. On March 16, 2004, the court issued an order denying without prejudice the defendants' motion to dismiss and granting the plaintiffs leave to amend their complaint to comply with *Cicippio–Puleo v. Islamic Republic of Iran*, 353 F.3d 1024 (D.C.Cir. 2004). On April 16, 2004, the plaintiffs filed an amended complaint seeking recovery of economic and punitive damages under international law, federal statutory causes of action, and state common-law torts of false imprisonment, wrongful death, survival, loss of consortium and solatium, and intentional infliction of emotional distress. *See generally* Am. Compl. On May 16, 2004, Libya, Qadhafi, and the ESO filed a motion to dismiss for lack of subject-matter jurisdiction, personal jurisdiction, and failure to state a claim. *See generally* Defs.' Mot. To aid the court in determining the validity of the plaintiffs' claims against Qadhafi, on March 1, 2005 the court requested that the Executive Branch file a suggestion of head-of-state immunity.

### III. ANALYSIS

### A. Subject Matter Jurisdiction

### 1. Legal Standard for a Rule 12(b)(1) Motion to Dismiss Under the FSIA

■ The Foreign Sovereign Immunities Act ("FSIA") is "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). The basic premise of the FSIA is that foreign sovereigns are immune from suit in the United States unless the action falls under one of the specific exceptions enumerated in the statute. 28 U.S.C. § 1604; *Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 196 (D.C.Cir. 2004) ("*Price II* "). If the foreign sovereign is not immune, the federal district courts have exclusive jurisdiction over the action. 28 U.S.C. §§ 1330, 1604; *Daliberti*

---

1. The plaintiffs allege that the Abu Nidal Organization emerged after the October 1973 Arab–Israeli war when Abu Nidal split with Yasser Arafat's Fatah organization over disagreements regarding terrorist objectives. Am. Compl. ¶ 15.

*v. Republic of Iraq,* 97 F.Supp.2d 38, 42 (D.D.C.2000) (citing *Amerada Hess,* 488 U.S. at 434–35, 109 S.Ct. 683).

■ Under the FSIA, the foreign sovereign has "immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." *Phoenix Consulting, Inc. v. Republic of Angola,* 216 F.3d 36, 39 (D.C.Cir.2000) (quoting *Foremost–McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438, 443 (D.C.Cir.1990)). The special circumstances of a foreign sovereign require the court to engage in more than the usual pretrial factual and legal determinations. *Foremost–McKesson,* 905 F.2d at 449. The D.C. Circuit has noted that it is particularly important that the court "satisfy itself of its authority to hear the case" before trial. *Id.* (quoting *Prakash v. Am. Univ.,* 727 F.2d 1174, 1179 (D.C.Cir.1984)).

■ Once a foreign-sovereign defendant asserts immunity, the plaintiff bears the burden of producing evidence to show that there is no immunity and that the court therefore has jurisdiction over the plaintiff's claims. *Daliberti,* 97 F.Supp.2d at 42 (citations omitted). A court may dismiss a complaint brought under the FSIA only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims ·that would entitle him to relief. *Id.* (citations omitted). Once the plaintiff has shown that the foreign defendant is not immune from suit, the defendant bears the burden of proving that the plaintiff's allegations do not bring the case within one of the statutory exceptions to immunity. *Phoenix Consulting,* 216 F.3d at 40.

The exception to foreign sovereign immunity at issue in this case is the state-sponsored terrorism exception, codified at 28 U.S.C. § 1605(a)(7), that Congress enacted as part of the comprehensive Anti-terrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, § 221(a), 110 Stat. 1214 (Apr. 24, 1996), which provides that foreign sovereigns are not immune when

> [m]oney damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources ... for such an act if such act or provision of material resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency[.]

28 U.S.C. § 1605(a)(7). The statute gives ·three additional requirements for the exception to apply: (1) the foreign state must be designated as a state sponsor of terrorism at the time the act occurred or was designated as such as a result of such an act; (2) the plaintiff must afford the foreign state a reasonable opportunity to arbitrate the dispute if the act occurred within that state's territory; and (3) either the claimant or the victim must have been a United States national at the time the act occurred. 28 U.S.C. § 1605(a)(7)(A)-(B).

■■ On a Rule 12(b)(1) motion to dismiss in an FSIA case, the defendant may challenge either the legal sufficiency or the factual underpinning of an exception. *Phoenix Consulting,* 216 F.3d at 40. Given that a foreign-state actor's entitlement to immunity from suit is a critical preliminary determination, the parties have the ·responsibility, and must be afforded a fair opportunity, to define issues of fact and law, and to submit evidence necessary to the resolution of the issues. *Foremost–McKesson,* 905 F.2d at 449 (*citing Gould, Inc. v. Pechiney Ugine Kuhlmann & Trefimetaux,* 853 F.2d 445, 451 (6th Cir. 1988)). Thus, the court must resolve the

substantive immunity-law issues of § 1605 before reaching a decision on subject matter jurisdiction. *Id.* (citations omitted).

■ If the defendant challenges the legal sufficiency of the plaintiff's jurisdictional allegations, the court should accept the plaintiff's factual allegations as true and determine whether such facts bring the case within any of the exceptions to foreign-state immunity invoked by the plaintiff. *Id.* This standard is similar to that of Rule 12(b)(6), under which dismissal is warranted if no plausible inferences can be drawn from the facts alleged that, if proven, would provide grounds for relief. *Price v. Socialist People's Libyan Arab Jamahiriya,* 294 F.3d 82, 93 (D.C.Cir. 2002) ("*Price I*"). The plaintiff need not set out all of the precise facts on which he bases his claim to survive a motion to dismiss. *Id.*

■ If the defendant challenges the factual basis of the court's jurisdiction, however, the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff. *Phoenix Consulting,* 216 F.3d at 40. Instead, the court must resolve any disputed issues of fact, the resolution of which is necessary to a ruling upon the motion to dismiss. *Id.; Price I,* 294 F.3d at 90; *Foremost–McKesson,* 905 F.2d at 449. The court has "considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction," but it must give the plaintiff "ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Phoenix Consulting,* 216 F.3d at 40 (quoting *Prakash,* 727 F.2d at 1179–80). To avoid burdening a foreign sovereign that proves to be immune from suit, however, the court should carefully control and limit jurisdictional discovery. *Id.; Foremost–McKesson,* 905 F.2d at 449.

## 2. The Provision of Material Support and Resources

■ The defendants argue that a nation loses immunity for providing material support to a terrorist organization only if the support funds the specific acts giving rise to the alleged injury. Defs.' Mot. at 10–13; Defs.' Reply at 2–4. Subsequent to parties' briefing on this issue, in *Kilburn v. Socialist People's Libyan Arab Jamahiriya,* the D.C. Circuit rejected this line of reasoning. 376 F.3d 1123, 1130 (D.C.Cir. 2004). The court held that "imposing a jurisdictional requirement that a state sponsor's financial assistance to a terrorist organization must be directly traceable to a particular terrorist act would likely render § 1605(a)(7)'s material support provision ineffectual. Money, after all, is fungible, and terrorist organizations can hardly be counted on to keep careful bookkeeping records." *Id.; see also Wyatt v. Syrian Arab Republic,* 362 F.Supp.2d 103, 2005 WL 517771, *6 n. 1 (D.D.C.2005) (holding that "[a] nation loses immunity even if the support it provides does not directly fund the particular terrorist act that injured or killed the victim. The only requirement is that the provision of support proximately causes the terrorist act") (citing *Kilburn,* 376 F.3d at 1130). Accordingly, the court rejects the defendants' argument that the material support provided by a nation to a terrorist organization must fund the specific acts that caused the alleged injury.

■ Similarly, the defendants argue that the material support the nation provides to a terrorist organization must be the but-for cause of the plaintiffs' injury. Defs.' Mot. at 16. Again, *Kilburn* rejects this line of reasoning. 376 F.3d at 1129 (holding that "to accept Libya's contention that § 1605(a)(7) requires a single causation standard that is more restrictive than the base-line standard of proximate cause—runs afoul of the FSIA's injunction

that a non-immune 'foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances' ") (citing 28 U.S.C. § 1606); *see also Wyatt,* 362 F.Supp.2d at 111, 2005 WL 517771 at *6 n. 1. Thus, the court rejects the defendants' argument that the material support a nation provides to a terrorist organization must be the but-for cause of the plaintiff's injury.

 That said, § 1605(a)(7) does require a minimal showing that Libya provided material support to the Abu Nidal organization and that such support was the proximate cause of the plaintiff's injury. *Id.* The defendants do not dispute the actions of the Abu Nidal Organization for jurisdictional purposes, but they do explicitly reject the plaintiffs' allegations that Libya supported the Abu Nidal Organization or in any way took part in the kidnaping, torture, and death of Collett. Defs.' Mot. at 3.[2] The defendants' challenge regarding the provision of material support and resources attacks the factual basis of the court's jurisdiction and requires the court to drop the assumption of truth that the court would otherwise afford the plaintiffs' complaint. *Phoenix Consulting,* 216 F.3d at 40. Such a dispute can only be resolved through appropriate jurisdictional discovery. *Wyatt,* 362 F.Supp.2d at 114–115, 2005 WL 517771 at *9 (ordering "jurisdictional discovery on the issue of Syria's alleged provision of material support and resources to [a terrorist organization]"). Accordingly, the court will order the parties to submit a joint discovery plan regarding Libya's alleged provision of material support and resources to the Abu Nidal Organization.

### B. Personal Jurisdiction

 The defendants argue that the court lacks personal jurisdiction over Qadhafi because he lacks minimum contacts with the United States. Defs.' Mot. at 5–10. The plaintiffs respond that Qadhafi does not enjoy this constitutional protection or in the alternative that Qadhafi has minimum contacts. Pls.' Opp'n at 23–25. Although the FSIA (in conjunction with 28 U.S.C. § 1330(b)) establishes personal jurisdiction over a state, it does not independently establish personal jurisdiction over an individual. *I.T. Consultants, Inc. v. Republic of Pakistan,* 351 F.3d 1184, 1191 (D.C.Cir.2003); *Price I,* 294 F.3d at 96. Accordingly, although the court can properly exercise personal jurisdiction over Libya, it is unclear whether the court can assert jurisdiction over Qadhafi.[3] Because

2. The court cannot make sense of the defendants' comment that the plaintiffs submitted "irrefutable" evidence that Libya supported the Abu Nidal Organization but that the defendant accepts this statement only *"arguendo."* Defs.' Mot. at 15. Whatever the defendants intended to convey in that portion of their brief, however, the court has little doubt that the defendants challenge the plaintiffs' assertion that Libya provided support to the Abu Nidal Organization. *See also* Pls.' Opp'n at 10 (noting that the "Libyan defendants contest only that Libya provided material support or resources, as required by Section 1605(a)(7), to the Abu Nidal Organization").

3. The defendants appear to raise a challenge to the court's personal jurisdiction over the John Doe defendants. Defs.' Mot. at 10 (claiming the applicability of the Due Process clause to the "individual Libyan defendants"). The court is not yet ready to make a determination on its jurisdiction over the John Doe defendants. "Where a complaint asserting claims against 'John Doe' defendants has not been amended to substitute defendants who are real parties in interest as soon as the identity is known or reasonably should have been known or, in any event, before the close of discovery, such an assertion is mere surplusage and will be disregarded by the court." *Rodriguez v. City of Passaic,* 730 F.Supp. 1314, 1319 n. 7 (D.N.J.1990) (only considering named defendants in motions before the court) (citation omitted). Furthermore, because the defendants do not expressly raise

the court awaits a potentially dispositive statement from the Executive Branch on head-of-state immunity, however, the court postpones inquiry into this uncertain area of the law. Thus, the court denies without prejudice the defendants' motion to dismiss Qadhafi for lack of personal jurisdiction.[4]

## C. Failure to State a Claim

### 1. Legal Standard for Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C.Cir.2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C.Cir. 2003) (citing FED R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47–48, 78 S.Ct. 99 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), or "plead law or match facts to every element of a legal theory."

*Krieger v. Fadely*, 211 F.3d 134, 136 (D.C.Cir.2000) (internal quotation marks and citation omitted).

Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Warren v. District of Columbia*, 353 F.3d 36, 37 (D.C.Cir.2004); *Kingman Park*, 348 F.3d at 1040. Thus, in resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations—including mixed questions of law and fact—as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C.Cir.2003); *Holy Land Found. for Relief & Development v. Ashcroft*, 333 F.3d 156, 165 (D.C.Cir.2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren*, 353 F.3d at 39; *Browning*, 292 F.3d at 242.

### 2. The Flatow Amendment Does Not Preempt All Other Causes of Action

■■■ The plaintiffs bring claims under D.C. and New York common law, the law of Lebanon, the Torture Victim Protection Act of 1991 ("TVPA"), the Flatow Amendment and international law. Am. Compl. ¶¶ 33, 37, 41, 46, 53, 58.[5] The defendants

---

the defense of personal jurisdiction for the ESO, they waive that defense. FED.R.CIV.P. 12(h)(1); *see also United States v. Reyes*, 905 F.2d 1497, 1499 (11th Cir.1990) (stating that when "presenting arguments to busy trial courts, subtlety is no virtue").

**4.** The defendants also challenge the exercise of personal jurisdiction over Libya, an argu-

ment that the D.C. Circuit explicitly rejected in *Price I*. 294 F.3d at 96. Accordingly, the court rejects this argument.

**5.** The court notes that the D.C. Circuit has not definitively stated which body of law provides a cause of action against foreign nations in suits brought pursuant to 28 U.S.C.

contend that the Flatow Amendment preempts all pre-existing causes of action against foreign states and that the plaintiffs therefore cannot bring state-law causes of action against foreign states. Defs.' Mot. at 19–20. The court rejects the defendants' argument.

█ In general, to determine whether a federal statute preempts all other law, the court must evaluate (1) the congressional intent to occupy the entire field and the pervasiveness of the regulatory scheme; (2) the interest of the federal government in preventing state intervention; and (3) the danger of conflict. between state laws and the administration of a federal program. *Pennsylvania v. Nel-*

son, 350 U.S. 497, 502–05, 76 S.Ct. 477, 100 L.Ed. 640 (1956). With regard to the FSIA, however, the Supreme Court has stated that "where state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 622 n. 11, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983); *see also Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). Cases under the FSIA have followed this approach and allowed plaintiffs to use various sources of law against foreign states, despite the strong federal interest in foreign affairs.[6] *See also* 28 U.S.C. § 1606

§ 1605(a)(7). *Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 200 (D.C.Cir.2004) (*"Price II "*) (declining to rule on the appropriate cause of action in a suit brought pursuant to 28 U.S.C. § 1605(a)(7)); *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1134 (D.C.Cir.2004) (same). Although some district courts have allowed what they describe as "federal common law" to provide causes of action against foreign nations, the D.C. Circuit has now made clear that federal common law and generic formulations of common law cannot furnish a cause of action, *Acree v. Republic of Iraq*, 370 F.3d 41, 55 (D.C.Cir.2004).

This court has previously held that a plaintiff bringing suit under § 1605(a)(7) may base his claim on conventional common-law torts such as assault, battery, and intentional infliction of emotional distress. *Kilburn v. Republic of Iran*, 277. F.Supp.2d 24, 35 (D.D.C. 2003). The court notes in this regard that the FSIA's "goal of applying identical substantive laws to foreign states and private individuals cannot be achieved ... unless a federal court utilizes the same choice-of-law analysis in FSIA cases as it would if all the parties to the action were private." *Virtual Defense and Development Intern., Inc. v. Republic of Moldova*, 133 F.Supp.2d 9, 16 (D.D.C.2001) (citing *Barkanic v. Gen. Admin. of Civil Aviation of the People's Republic of China*, 923 F.2d 957, 959–60 (2d Cir.1991)). Therefore, "the FSIA requires courts to utilize the choice of

law analysis of the forum state with respect to all issues governed by state substantive law." *Dar El–Bina Engineering & Contracting Co., Ltd. v. Republic of Iraq*, 79 F.Supp.2d 374, 383 (S.D.N.Y.2000); *Barkanic*, 923 F.2d at 960. Ultimately, because the defendants only challenge the plaintiffs' state and foreign-law claims on preemption grounds, at this stage of the proceedings the court need not engage in a choice-of-law analysis to determine which law (e.g., D.C., New York, or Lebanese) in fact applies.

6. *Dammarell v. Islamic Republic of Iran*, 281 F.Supp.2d 105, 194 (D.D.C.2003) (stating that "Courts have regularly concluded that common law claims for, e.g., wrongful death, survival, assault, and battery may be asserted against state sponsors of terrorism under the FSIA") (citing *Jenco v. Islamic Republic of Iran*, 154 F.Supp.2d 27, 32–33 (D.D.C.2001); *Sutherland v. Islamic Republic of Iran*, 151 F.Supp.2d 27, 47–50 (D.D.C.2001); *Elahi v. The Islamic Republic of Iran*, 124 F.Supp.2d 97, 109–13 (D.D.C.2000); *Flatow v. Islamic Republic of Iran*, 999 F.Supp. 1, 27–32 (D.D.C.1998)). *See also Blaxland v. Commonwealth Director of Public Prosecutions*, 323 F.3d 1198, 1204 n. 2 (9th Cir.2003) (applying California law); *Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1030–32 (2d Cir.1996) (noting that "state law generally controls in FSIA cases," applying New York choice of law rules, and determining that South African law should apply); *Barkanic*, 923 F.2d at 961

(stating that "a foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances"); *Verlinden B.V. v. Central Bank of Nigeria,* 647 F.2d 320, 326 (2d Cir.1981) (stating that when Congress created the FSIA, it did not intend to alter the substantive law of liability or "to create new federal causes of action," but sought only "to provide access to the courts in order to resolve ordinary legal disputes").

■■■ Turning to the Flatow Amendment, neither legislative history nor case law interpreting the Flatow Amendment suggest that Congress intended the amendment to provide the *exclusive* cause of action against state-sponsors of terrorism.[7] Contrary to the defendants' assertion that the Flatow Amendment restricts a foreign sovereign's liability, the legislative history indicates the Flatow Amendment *expands* liability. H.R. Conf. Rep. No. 104–863, at 985 (1996). Indeed, the legislative history of the Flatow Amendment states that it "expands the scope of monetary damages[,]" which implies for-

eign sovereigns were liable before the enactment of the Flatow Amendment. *Id.* Moreover, because of *Cicippio–Puleo,* 353 F.3d at 1033 (holding that neither § 1605(a)(7) nor Flatow create a cause of action against a foreign government), if the Flatow Amendment preempted *all* causes of action against foreign states, § 1606 would be meaningless in § 1605(a)(7) actions against states. Thus, in light of the overall purposes of the FSIA and the legislative history of the Flatow Amendment, the court holds that the Flatow Amendment does not preempt all other causes of action but rather seeks to make clear to other countries the extent and seriousness of their liability. *See also* 146 Cong. Rec. S10164–02 (2000) (statement of Sen. Lautenberg) (stating that by passing anti-terrorism statutes like the Flatow Amendment and corresponding legislation Congress "want[s] this message to go out across this globe: that if you sponsor terrorism against American citizens, you will pay a price"). Accordingly, the court rejects the defendants' preemption argument and proceeds to address the validity of the plaintiffs' causes of action.

(holding that "applying the forum state's choice of law analysis will help ensure that foreign states are liable 'in the same manner and to the same extent as a private individual under like circumstances,' " applying New York's choice of law methodology, and applying Chinese law).

7. *Kilburn,* 277 F.Supp.2d at 36 (concluding that "the plaintiff's common-law claims must ... coexist alongside the federal statutory cause of action granted under the Flatow Amendment"); *Cronin v. Islamic Republic of Iran,* 238 F.Supp.2d 222, 233 (D.D.C.2002) (stating that "Congress amended 28 U.S.C. § 1606 in 1998 to permit victims to recover punitive damages against foreign states in actions brought pursuant to § 1605(a)(7). It seems highly unlikely that Congress would amend § 1606 to specifically permit punitive damage awards against foreign states under § 1605(a)(7) if a cause of action did not exist

against those states. Furthermore, Congress repealed the amendment to § 1606 in 2000 after plaintiffs had recovered substantial punitive damage awards against foreign states like Iran. It is even more implausible that Congress would amend that provision a second time by eliminating punitive damage awards against foreign states if victims did not have a cause of action against those foreign states at all") (citations omitted); H.R. Conf. Rep. 104–863, at 985 (stating that the Flatow Amendment "*expand[s]* the scope of monetary damage awards available to American victims of international terrorism") (emphasis added); *see also* H.R.Rep. No. 106–733 (2000) (stating that "the 'Flatow Amendment' revised the FSIA to expressly provide that punitive damages were available in actions brought under the state sponsored terrorism exception to immunity. This was done to ensure that the state sponsored terrorism exception had a deterrent effect—the potential for substantial civil liability").

### 3. The Flatow Amendment As a Cause of Action

 The Flatow Amendment does not provide a cause of action against foreign states or against agencies or instrumentalities of a foreign state. *Acree*, 370 F.3d at 59 (citing *Cicippio–Puleo*, 353 F.3d at 1033). The Flatow amendment only allows a cause of action against "an official, employee, or agent of a foreign state ... acting within the scope of his or her office, employment, · or agency." 28 U.S.C. § 1605 note. Furthermore, "*Cicippio–Puleo* ... made clear that any suit against an official of a foreign state must be a suit in that official's *personal* capacity." *Acree*, 370 F.3d at 59. The plaintiffs assert a cause of action against Qadhafi, the ESO, and apparently against ESO officials in both their individual and official capacity under the Flatow Amendment. Pls.' Opp'n at 17–19. Thus, leaving aside the issue of Qadhafi's immunity, although the plaintiffs may allege a cause of action against individual in their persons capacities, the court dismisses the plaintiffs' official-capacity claims. *Acree*, 370 F.3d at 59; *Cicippio–Puleo*, 353 F.3d at 1034.

### 4. International Law

The plaintiffs allege that international law provides a cause of action for false imprisonment, wrongful death, survival, loss of consortium and solatium and intentional infliction of emotional distress. Am. Compl. ¶¶ 33, 37, 41, 46, 53. The defendants argue that the court should dismiss the plaintiffs' international law claims because the claims are "meaningless" and "vague." Defs.' Mot. at 19. In response to the defendants, the plaintiffs list in their opposition a variety of specific sources of international law that they believe provide causes of action. Pls.' Opp'n at 20 (listing The Universal Declaration of Human Rights, G.A. Res. 217A (III), U.N. GAOR, U.N. Doc. A/810, at 71 (1948); The International Covenant of Political and Civil Rights, Dec. 19, 1966, 999 U.N.T.S. 171, 6 I.L.M. 368 (entered into force Sept. 8, 1992); The Convention on the Prevention and Punishment of Crimes Against Internationally Protected Persons, Including Diplomatic Agents, *adopted by the U.N. General Assembly* Dec. 14, 1973, 28 U.S.T. 1975, 13 I.L.M. 41 (1974) (entered into force for the U.S. Jan. 6, 1985) (codified at 18 U.S.C. § 112); and The General Assembly Resolutions on Measures to Prevent International Terrorism, G.A. Res. 40/61, U.N. GAOR, 40th Sess., 108th plenary mtg. at 301, U.N. Doc. A/RES/40/61 (1986) and G.A. Res. 42/519, U.N. GAOR, 42nd Sess., U.N. Doc. A/42/519 (1987)).

Rather than challenge these specific sources of international law, the defendants focus exclusively on their preemption argument, which this court has now rejected. Reply at 8. Because the court thus lacks the benefit of full briefing on the defendants' putative causes of action under international law, the court declines to address each of the sources that the plaintiffs have listed. Instead, the court denies without prejudice the defendants' motion to dismiss the plaintiffs' claims under international law and allows the defendants to renew their challenges to the plaintiffs' causes of action under international law in their future submissions to this court following jurisdictional discovery or the Executive Branch's suggestion of immunity.

### 5. The Torture Victim Protection Act

The plaintiffs bring claims against Libya, the ESO and Qadhafi for wrongful death and torture under the TVPA. Am. Compl. ¶¶ 54–58; *see also* Opp'n at 18 (stating that the plaintiffs have causes of action "against the individual who, acting on behalf of Libya, Muammar Qadhafi, and

the ESO" cause the plaintiffs' harm). The TVPA provides in relevant part as follows:

(a) Liability.—An individual who, under actual or apparent authority, or color of law, of any foreign nation—

(1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or

(2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death.

(b) Exhaustion of remedies.—A court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred.

(c) Statute of limitations.—No action shall be maintained under this section unless it is commenced within 10 years after the cause of action arose.

28 U.S.C. § 1350 (note). The defendants argue for dismissal of the plaintiffs' TVPA claims because (a) the TVPA only applies to individuals, (b) the claims are barred by the TVPA's statute of limitations, and (c) the plaintiffs have not demonstrated that they exhausted adequate and available remedies in the place where the harm occurred. Defs.' Mot. at 25–26.

### a. The TVPA Only Applies to Individuals

■ The TVPA explicitly limits its applicability to "individual" defendants. 28 U.S.C. § 1350 (note). The legislative history to the TVPA further indicates that the term "individual" is used "to make crystal clear that foreign states or their entities cannot be sued under this bill under any circumstances: only individuals may be sued." S.Rep. No. 102–249, at 3 (1991). Nevertheless, the plaintiffs assert a cause of action under the TVPA against Libya and the ESO based on *respondeat superior* principles. Am. Compl. ¶¶ 57–58; Pls.' Opp'n at 18–19 & n. 6. The court will not circumvent congressional intent by imposing liability on Libya or the ESO based on *respondeat superior* principles. *Cf. Cicippio–Puleo*, 353 F.3d at 1036 (deciding that the Flatow Amendment did not provide a cause of action against foreign states based on the principles of respondeat superior because "[r]ecognizing a federal cause of action against foreign states ... is a step that Congress has yet to take. And it is for Congress, not the courts, to decide whether a cause of action should lie against foreign states"). Accordingly, the court holds that the TVPA does not provide a cause of action against Libya or the ESO, either directly or via *respondeat superior*.

### b. Statute of Limitations

■ Although the defendants are correct in that the TVPA has a ten year statute of limitations, the TVPA "explicitly calls for consideration of all equitable tolling principles in calculating this period with a view toward giving justice to plaintiffs rights." S. Rep. 102–249, 10–11. "Excluded ... from calculation of the statute of limitation would be the period when a defendant has immunity from suit." *Id.* at 11. In this regard, 28 U.S.C. § 1605(f) states that "the period during which the foreign state was immune from suit, shall apply in calculating this [ten year] limitation period." 28 U.S.C. § 1605(f). Accordingly, the statute of limitations for the plaintiffs' claims must be tolled to begin when the defendants were stripped of their immunity with the 1996 enactment of 28 U.S.C. § 1605(a)(7). Under such a calculation, the statute of limitations in the TVPA does not bar the plaintiffs' claims.

### c. Exhaustion

■ The defendants argue that a claim cannot be brought under the TVPA because the plaintiffs have not asserted that they exhausted all available remedies in Lebanon. Defs.' Mot. 26. Because the plaintiffs do not respond to this argument in their opposition, the court would normally hold that the plaintiffs concede this point. *Fox v. American Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C.Cir.2004). In this case, however, the court believes that such a holding would conflict with the goals of the TVPA. Specifically, with regard to exhaustion of remedies, the legislative history indicates that "the respondent has the burden of raising the nonexhaustion of remedies as an affirmative defense and must show that domestic remedies exist that the claimant did not use." S. Rep. 102–249, at 10; *Sinaltrainal v. Coca–Cola Co.*, 256 F.Supp.2d 1345, 1357 (S.D.Fla. 2003) (deciding that the plaintiffs "are entitled to a presumption that local remedies have been exhausted"). The defendants allude to the possibility of remedies in Lebanon but provide the court with no details or analysis concerning what those remedies would be. The plaintiffs are remiss for neglecting to respond to this argument, but the court in its discretion and in accordance with congressional intent determines that the defendants failed to meet their burden.

For the above reasons, the court holds that the plaintiffs may not bring TVPA claims against Libya or the ESO, either directly or via *respondeat superior* principles. The court rejects the defendants' statute of limitations argument and holds that the defendants do not sufficiently demonstrate failure to exhaust local remedies. Finally, as to Qadhafi's liability, the court notes the congressional intent that "only defendants over which a court in the United States has personal jurisdiction may be sued" under the TVPA. S.Rep. No. 102–249, at 7. As indicated above, because the court awaits the Executive Branch's statement on Qadhafi's head-of-state immunity, the court has declined to address the question of whether it has personal jurisdiction over Qadhafi. At this moment, therefore, the court is not in an appropriate position to hold that the TVPA is a viable cause of action against Qadhafi. S.Rep. No. 102–249, at 7.

### 6. Punitive Damages

■ The plaintiffs seek punitive damages against Libya, the ESO, and Qadhafi. Am. Compl. ¶¶ 59–62. The defendants argue that the plaintiffs cannot sustain a claim for punitive damages against any of these defendants. Defs.' Mot. at 26–27. As to punitive damages against Libya, 28 U.S.C. § 1606 states in relevant part that "a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages." 28 U.S.C. § 1606. The plaintiffs' claims for punitive damages against Libya therefore fail. *Id.*

As to the ESO, in *Kilburn* this court carefully analyzed the issue of punitive damages against entities such as the ESO and held that it would allow such claims to proceed. 277 F.Supp.2d at 41–44. On appeal, the D.C. Circuit chose not to address the issue. 376 F.3d at 1136. Accordingly, the law in this circuit on the punitive damages issue has not changed since this court's decision in *Kilburn*, and the court declines to depart from its reasoning therein. *But see Dammarell v. Islamic Republic of Iran*, 281 F.Supp.2d 105, 202–03 (D.D.C.2003).

Finally, the defendants raise head-of-state immunity challenges to the potential for punitive damages against Qadhafi. Defs.' Mot. at 27. As it has for other arguments concerning Qadhafi, the court defers consideration of such challenges until after the court receives word from the

Executive Branch concerning head-of-state immunity.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendants' motion to dismiss and orders the parties to submit a joint jurisdictional discovery plan concerning Libya's provision of màterial support and resources to the Abu Nidal Organization on or before April 25, 2005. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 24th day of March 2005.