Blake **KILBURN, individually on his own behalf and as Executor of the Estate of Peter C. Kilburn, deceased, Plaintiffs,**

v.

The **REPUBLIC OF IRAN**
et al., **Defendants.**

Civil Action No. 01–1301 (RMU).
Document No. 69.

United States District Court,
District of Columbia.

July 26, 2006.

Michael Lee Martinez, Stuart H. Newberger, Crowell & Moring, L.L.P., Washington, DC, for Plaintiffs.

Arman Dabiri, Law Offices of Arman Dabiri & Associates, P.L.L.C., Washington, DC, for Defendants.

## *MEMORANDUM OPINION*

URBINA, District Judge.

### DENYING DEFENDANT LIBYA'S MOTION TO DISMISS

### I. INTRODUCTION

The plaintiffs bring this suit under the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act alleging that the defendants provided material support for the hostage taking, torture and

extrajudicial killing of Peter Kilburn. In this motion to dismiss, defendants the Socialist People's Libyan Arab Jamahirya and the Libyan External Security Organization (collectively, "the defendant" or "Libya") contend that the court lacks subject-matter jurisdiction over the case as a result of the United States Department of State's removal of Libya from its list of state sponsors of terrorism. The plaintiffs counter that the change in Libya's status has no bearing on the court's jurisdiction pursuant to the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(7). Because the defendant was a state sponsor of terrorism at the time the alleged acts occurred, the court has jurisdiction pursuant to the FSIA and denies the defendant's motion.

## II. BACKGROUND[1]

### A. Factual History

The claims in this case stem from the alleged kidnaping and murder of Peter Kilburn in Lebanon in 1984 by two terrorist organizations, Hizballah and the Arab Revolutionary Cells. Compl. at 6. The plaintiffs claim that the defendant provided material support to these two organizations. *Kilburn v. Iran,* 277 F.Supp.2d 24, 27 (D.D.C.2003). In 1979, the U.S. Department of State designated Libya as a state sponsor of terrorism. Compl. at 2–3. This designation was effective at the time of the events in question. *Id.* On May 12, 2006, President Bush rescinded Libya's designation as a state sponsor of terrorism. Presidential Determination No.2006–14, 71 Fed.Reg. 31909 (May 12, 2006).

### B. Procedural History

On June 12, 2001, the plaintiffs filed suit seeking damages against Libya under the state-sponsored terrorism exception to the

FSIA for the wrongful death, battery and false imprisonment of Peter Kilburn. In July 2004, the D.C. Circuit held that the FSIA stripped Libya of its sovereign immunity because Libya was a state sponsor of terrorism, and that this court had jurisdiction over the case. *Kilburn v. Libyan,* 376 F.3d 1123 (D.C.Cir.2004). The defendant brings this motion to dismiss, alleging that because the President rescinded Libya's designation as a state sponsor of terrorism, the plaintiffs cannot maintain their suit under the state-sponsored terrorism exception. Def.'s Mot. at 1. The court now turns to that motion.

## III. ANALYSIS

### 1. Legal Standard for a Rule 12(b)(1) Motion to Dismiss Under the FSIA

The Foreign Sovereign Immunities Act ("FSIA") is "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 434, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). The basic premise of the FSIA is that foreign sovereigns are immune from suit in the United States unless the action falls under one of the specific exceptions enumerated in the statute. 28 U.S.C. § 1604; *Price v. Socialist People's Libyan Arab Jamahiriya,* 389 F.3d 192, 196 (D.C.Cir. 2004) (*"Price II"*). If the foreign sovereign is not immune, the federal district courts have exclusive jurisdiction over the action. 28 U.S.C. §§ 1330, 1604; *Daliberti v. Republic of Iraq,* 97 F.Supp.2d 38, 42 (D.D.C.2000) (citing *Amerada Hess,* 488 U.S. at 434–35, 109 S.Ct. 683).

Under the FSIA, the foreign sovereign has "immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits."

---

**1.** For a more comprehensive recitation of the factual and procedural history of the case,

please refer to *Kilburn v. Iran,* 277 F.Supp.2d 24 (D.D.C.2003).

*Phoenix Consulting, Inc. v. Republic of Angola,* 216 F.3d 36, 39 (D.C.Cir.2000) (quoting *Foremost–McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438, 443 (D.C.Cir.1990)). The special circumstances of a foreign sovereign require the court to engage in more than the usual pretrial factual and legal determinations. *Foremost–McKesson,* 905 F.2d at 449. The D.C. Circuit has noted that it is particularly important that the court "satisfy itself of its authority to hear the case" before trial. *Id.* (quoting *Prakash v. Am. Univ.,* 727 F.2d 1174, 1179 (D.C.Cir.1984)).

▮▮▮ Once a foreign-sovereign defendant asserts immunity, the plaintiff bears the burden of producing evidence to show that there is no immunity and that the court therefore has jurisdiction over the plaintiff's claims. *Daliberti,* 97 F.Supp.2d at 42 (citations omitted). A court may dismiss a complaint brought under the FSIA only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Id.* (citations omitted). Once the plaintiff has shown that the foreign defendant is not immune from suit, the defendant bears the burden of proving that the plaintiff's allegations do not bring the case within one of the statutory exceptions to immunity. *Phoenix Consulting,* 216 F.3d at 40.

The exception to foreign sovereign immunity at issue in this case is the state-sponsored terrorism exception, codified at 28 U.S.C. § 1605(a)(7), that Congress enacted as part of the comprehensive Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, § 221(a), 110 Stat. 1214 (Apr. 24, 1996), which provides that foreign sovereigns are not immune when

> [m]oney damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . for such an act if such act or provision of material resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency[.]

28 U.S.C. § 1605(a)(7). The statute gives three additional requirements for the exception to apply: (1) the foreign state must be designated as a state sponsor of terrorism at the time the act occurred or was designated as such as a result of such an act; (2) the plaintiff must afford the foreign state a reasonable opportunity to arbitrate the dispute if the act occurred within that state's territory; and (3) either the claimant or the victim must have been a United States national at the time the act occurred. *Collett v. Socialist Peoples' Libyan Arab Jamahiriya,* 362 F.Supp.2d 230, 235 (D.D.C.2005) (citing 28 U.S.C. § 1605(a)(7)(A)-(B)).

### 2. The Presidential Determination does Not Divest the Court of its Jurisdiction over the Plaintiffs' Claims

▮ The defendant argues that because Libya no longer bears the designation of a state sponsor of terrorism, it enjoys immunity from suit under the FSIA, and the court must dismiss the plaintiffs' claims.[2] Def.'s Mot. at 1, 4. The plaintiffs counter that the Presidential Determination has no

---

**2.** The court notes that the defendant's motion recites verbatim a paragraph from *Rein v. Socialist People's Libyan Arab Jamahiriya,* 162 F.3d 748, 763 (2d Cir.1998), without providing proper citation, Def.'s Mot. to Dismiss at 2. Without implying that this omission was the product of anything more than sloppy lawyering, the court impresses upon defense counsel its intolerance for plagiarism. The court expects counsel to fully comply with this court's rules and submit work product befitting of pleadings in a federal court.

bearing on the instant case because Libya was designated as a state sponsor of terrorism at the time the events in question took place. Pls.' Opp'n. at 3–5. The court agrees.

■ Under the FSIA, foreign states are not immune from suit for "an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources" if the foreign state bears the designation of state sponsor of terrorism at the time the act occurred or if it receives the designation as a result of such an act. 28 U.S.C. § 1605(a)(7). The defendant argues that the Presidential Determination rescinding Libya's designation as a state sponsor of terrorism should restore immunity to Libya, even for acts that occurred while it still bore that designation.[3] Def's Mot. at 1. The defendant's interpretation of the FSIA, however, is not consistent with the plain language of the statute.[4] The "precise language of § 1605(a)(7) provides that the terrorism exception [applies] when a defendant country is designated as a sponsor of terrorism 'at the time the act occurred ...'" *Acree v. Republic of Iraq*, 370 F.3d 41, 56 (D.C.Cir.2004) (quoting 28 U.S.C. § 1605(a)(7)). Under the FSIA, "when a country, once designated as a state sponsor of terrorism, is subsequently restored to good standing, that country is still amenable to suit for acts that took place prior to the restoration of its sovereign immunity." *Acree*, 370 F.3d at 56. The President designated Libya as a state sponsor of terrorism in 1970, and the events giving rise to the case occurred between 1984 and 1986. *Kilburn v. Iran*, 277 F.Supp.2d at 27. Therefore, the acts in question occurred while the defendant was designated as a state sponsor of terrorism, and the Presidential Determination does not divest the court of jurisdiction over the case. Accordingly, the court denies the defendant's motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, the court denies the defendant's motion to dismiss. An order directing the parties in a manner consistent with this memorandum opinion is separately and contemporaneously issued this 26th day of July, 2006.

■

---

3. The Foreign Assistance Act, 22 U.S.C. § 2371, gives the President the authority to rescind a country's designation as a state sponsor of terrorism. 22 U.S.C. § 2371(c) (stating that the designation "may not be rescinded unless the President submits to the Speaker of the House of Representatives and the chairman of the Committee on Foreign Relations of the Senate ... [a] report certifying" that fundamental changes had taken place in the country).

4. The defendant's position is also inconsistent with the language of the Presidential Determination. The Determination acknowledges the existence and continuation of suits against Libya and declares that the U.S. has "secured a confirmation from Libya" that it would carry out agreed—to settlements and continue to respond in good faith to legal cases brought against it. Presidential Determination No.2006–14, 71 Fed.Reg. 31909 (May 12, 2006).