**John DOE, et al., Plaintiffs,**

v.

**Sheikh Usama Bin–Muhammad BIN LADEN, et al., Defendants.**

**Civil Action No. 01–2516 (RWR).**

United States District Court, District of Columbia.

Sept. 30, 2008.

Paul J. Orfanedes, James F. Peterson, Judicial Watch, Inc., Washington, DC, for Plaintiffs.

R. Michael Smith, Gordon Feinblatt Rothman Hoffberger & Hollander LLC, Baltimore, MD, for Defendants.

### MEMORANDUM OPINION AND ORDER

RICHARD W. ROBERTS, District Judge.

Plaintiff John Doe brought an action as executor of the estate and personal representative of Jane Doe and on his own behalf invoking the noncommercial tort exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(5), alleging that the Transitional Islamic State of Afghanistan ("Afghanistan") unlawfully conspired with the Taliban and Iraq to conduct the September 11, 2001 attacks in which Doe's wife died. Afghanistan, asserting foreign sovereign immunity, has moved under Fed.R.Civ.P. 12(b)(1) to dismiss the complaint for lack of subject matter jurisdiction. Because Doe has set forth some factual allegations of Afghanistan's participation in the conspiracy, but additional evidence may confirm or disprove the presence of subject matter jurisdiction, Afghanistan's motion to dismiss will be denied without prejudice and the parties will be directed to confer regarding limited jurisdictional discovery.

### BACKGROUND

■ Doe filed this action against Afghanistan and other defendants for conspiracy and wrongful death under the FSIA noncommercial tort exception seeking compensatory and punitive damages. He alleges that Afghanistan, in concert with the other defendants, conspired to "conduct illegal and unlawful terrorist attacks on the United States, including, on information and belief, the terrorist attacks of September 11, 2001" in which Doe's wife died. (Compl.¶¶ 19, 60.) Doe served process upon Afghanistan through diplomatic channels as permitted by 28 U.S.C. § 1608(a)(4). *See* Docket Entry 11. Afghanistan has moved to dismiss Doe's complaint for lack of subject matter jurisdiction, maintaining that Doe's cited exception does not abrogate Afghanistan's sovereign immunity. (Def.'s Mem. in Supp. of Mot. to Vacate & Dismiss ("Def.'s Mem.") at 4–6.)[1]

### DISCUSSION

■ "The objection that a federal court lacks subject-matter jurisdiction ... may be raised by a party, or by a court on its own initiative, at any stage in the litigation...." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S.Ct. 1235, 1240, 163 L.Ed.2d 1097 (2006) (citing Fed.R.Civ.P. 12(b)(1)). "On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." *Larsen v. U.S. Navy*, 486 F.Supp.2d 11, 18 (D.D.C.2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The court must construe the plaintiff's allegations liberally. *See Sadhvani v. Chertoff*, 460 F.Supp.2d 114, 118 (D.D.C.2006). "Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer

---

1. Afghanistan also moves to dismiss for lack of personal jurisdiction and seeks to vacate the clerk's January 29, 2003 entry of default against it. If subject matter jurisdiction exists and Afghaistan does not enjoy immunity under the FSIA, personal jurisdiction exists since service of process has been made in accordance with the FSIA. *See Valore v. Islamic Republic of Iran,* 478 F.Supp.2d 101, 107 (D.D.C.2007). Because it has not yet been determined whether subject matter jurisdiction exists, Afghanistan's request to vacate the clerk's entry of default will be denied without prejudice.

scrutiny when resolving a Rule 12(b)(1) motion...." *Jin v. Ministry of State Sec.*, 475 F.Supp.2d 54, 60 (D.D.C.2007). Subject-matter jurisdiction can never be waived. *Arbaugh*, 126 S.Ct. at 1244.

■ "'If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, then the district court should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the [FSIA] exceptions to immunity invoked by the plaintiff.'" *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1127 (D.C.Cir.2004) (quoting *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C.Cir.2000)). But, if the factual basis of the court's jurisdiction is challenged, "'the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss.'" *Id.* (quoting *Phoenix Consulting Inc.*, 216 F.3d at 40). *See also Collett v. Socialist Peoples' Libyan Arab Jamahiriya*, 362 F.Supp.2d 230, 236 (D.D.C.2005) (noting that when a factual basis is challenged, the court cannot deny a Rule 12(b)(1) motion to dismiss "merely by assuming the truth of the facts alleged by the plaintiff").

■ The court "retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." *Kilburn*, 376 F.3d at 1131 (internal quotations omitted). However, any discovery that is conducted should be limited to avoid "frustrat[ing] the significance and benefit of ... immunity from suit." *Foremost–McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C.Cir.1990) (internal quotation marks omitted) (brackets and ellipsis in original) (noting that when conclusory allegations attributing actions of co-defendants to Iran are challenged, "the plaintiff must provide

further proof of government involvement"). *See also Collett*, 362 F.Supp.2d at 236 (noting that the plaintiff must be given "ample opportunity to secure and present evidence relevant to the existence of jurisdiction" (internal quotation marks omitted)). "[A] court should allow for limited jurisdictional discovery if a plaintiff shows a nonconclusory basis for asserting jurisdiction and a likelihood that additional supplemental facts will make jurisdiction proper." *Intelsat Global Sales & Mktg., Ltd. v. Comm'ty of Yugoslav Posts Tels. & Tels.*, 534 F.Supp.2d 32, 34 (D.D.C.2008). "At minimum, a plaintiff must 'allege some facts upon which jurisdiction could be found after discovery is completed.'" *Id.* (quoting *Doe I v. State of Israel*, 400 F.Supp.2d 86, 122 (D.D.C.2005)).

■ Under the FSIA, a court may entertain jurisdiction over a civil complaint directed against a foreign sovereign "only if the foreign state lacks immunity under the Act's prescriptions[.]" *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1544 (D.C.Cir.1987); *see also* 28 U.S.C. § 1604; *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 87–88 (D.C.Cir.2002) ("The original FSIA was not intended as human rights legislation.... Thus, no matter how allegedly egregious a foreign state's conduct, suits that did not fit into one of the statute's discrete and limited exceptions invariably were rejected."). The Act's exceptions allow a plaintiff to bring suit under certain conditions. 28 U.S.C. § 1605; *see Republic of Austria v. Altmann*, 541 U.S. 677, 699, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004) (" '[S]ubject-matter jurisdiction ... depends on the existence of one of the specified exceptions to foreign sovereign immunity.' " (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434–35, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989))). Doe bears the burden of

showing that one of the exceptions under the FSIA constitutes a waiver of Afghanistan's sovereign immunity. *See Jin,* 475 F.Supp.2d at 61.

Doe invokes the noncommercial tort exception to the FSIA which dissolves immunity in any case "in which money damages are sought against a foreign state for personal injury or death ... occurring in the United States and caused by the tortious act or omission of that foreign state[.]" 28 U.S.C. § 1605(a)(5). Afghanistan argues that the noncommercial tort exception is inapplicable because the terrorism exception stated in 28 U.S.C. § 1605A(a)(1)[2] is the provision that exclusively "deals with ... the type of terrorist act that forms the basis for Doe's claims."[3] (Def.'s Mem. at 5 (citing *Persinger v. Islamic Republic of Iran,* 729 F.2d 835, 843 (D.C.Cir.1984) ("When Congress uses explicit language in one part of a statute to cover a particular situation and then uses different language in another part of the same statute, a strong inference arises that the two provisions do not mean the same thing.")).) Afghanistan maintains that because § 1605A(a)(1) expressly addresses terrorist acts, *see Mwani v. bin Laden,* 417 F.3d 1, 15 n. 15 (D.C.Cir.2005), § 1605(a)(5) cannot cover similar claims. Alternatively, Afghanistan contends that even if Doe were to invoke the terrorism exception as a waiver of immunity, his complaint must be dismissed because § 1605A(a)(2)(A)(i)(I) requires that the foreign sovereign be designated as a state

sponsor of terrorism, and the State Department has not classified Afghanistan as such.[4] (Def.'s Mem. at 5.)

Section 1605(a)(5) is cast in general terms pertaining to all tort actions for money damages and seems facially to apply to Doe's factual allegations. *See Persinger,* 729 F.2d at 839–40 (citing H.R. Rep. No. 94–1487, at 20–21 (1976)). Doe persuasively argues that precluding him from bringing his action under § 1605(a)(5) would "result in a complete inability for U.S. citizens to bring tort claims against any foreign state arising from acts of terrorism other than the handful designated as state sponsors of terrorism." (Pls.' Opp'n to Def.'s Mot. to Vacate Default & Dismiss ("Pls.' Opp' n") at 9.) "[C]onstruction of a statute leading to unjust or absurd consequences should be avoided[,]" *Quinn v. Butz,* 510 F.2d 743, 753 (D.C.Cir.1975), and courts should not "ascribe to Congress errors that it clearly did not intend." *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051, 1089 (D.C.Cir.1981) (Mikva, J., concurring). Thus, the plain language of the statute should not dictate forbidding Doe's suit under § 1605(a)(5), and the peculiar result that a construction barring the action would produce should counsel against it.

 To move forward under § 1605(a)(5), Doe must show that Afghanistan's tortious conduct caused his injuries and that Afghanistan's actions were not

**2.** The exception was codified at 28 U.S.C. § 1605(a)(7) at the time that Afghanistan filed its memorandum. That section has since been repealed by Pub.L. No. 110–181, 122 Stat. 3 (2008), and is now found at 28 U.S.C. § 1605A(a)(1).

**3.** This exception abrogates immunity in any case "in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture,

extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act[.]" 28 U.S.C. § 1605A(a)(1).

**4.** The complaint does invoke both the noncommercial tort and the terrorism exceptions, but the latter is not applicable to Afghanistan because Afghanistan has never been designated as a state sponsor of terrorism. *See Mwani,* 417 F.3d at 15 n. 15.

discretionary, "i.e., not grounded in [its] social, economic, or political policies." *In re Terrorist Attacks on Sept. 11, 2001,* 392 F.Supp.2d 539, 554 (S.D.N.Y.2005). Doe claims that although Afghanistan was not one of the direct perpetrators of the attacks in the United States, Afghanistan is liable as a co-conspirator "for all the tortious acts committed by its co-conspirators in furtherance of the conspiracy." (Pls.' Opp'n at 5 n. 4.)[5] Under a theory of civil conspiracy, the acts of one defendant may be imputed to another. *See Mazloum v. Dist. of Columbia,* 442 F.Supp.2d 1, 11 (D.D.C.2006). In order to establish a civil conspiracy, a plaintiff must allege (1) "an agreement between two or more persons or entities; (2) to do an unlawful act, or an otherwise lawful act by unlawful means; (3) there was an overt act committed in furtherance of this unlawful agreement; and (4) damages were incurred by the plaintiff as a proximate result of the actions taken pursuant to the conspiracy." *Estate of Heiser v. Islamic Republic of Iran,* 466 F.Supp.2d 229, 267 (D.D.C.2006). To survive Afghanistan's motion to dismiss, Doe "must plead facts from which it reasonably can be inferred that [Afghanistan] knew or should have known that their tortious actions were supporting ter-

rorists or terrorist fronts." *In re Terrorist Attacks,* 392 F.Supp.2d at 554. *See also Burnett v. Al Baraka Inv. & Dev. Corp.,* 274 F.Supp.2d 86, 104–05 (D.D.C. 2003) (finding that the complaint adequately alleged facts to establish defendant as a co-conspirator because defendant "aided al Qaeda terrorist groups ... by providing them with recruits, weapons and money" and that defendant supported "al Qaeda with knowledge of, and the intent to further, al Qaeda's terrorist activities").

▮ In the complaint, Doe alleges that Afghanistan "expressly agreed to conduct illegal and unlawful terrorist attacks on the United States[ ]" and "provided material support and resources" to Bin Laden and Al Qaeda, including "a safe haven and base of operation" from which to conduct their activities. (Compl.¶ 60.) In support of the assertion that Afghanistan agreed to the attacks, Doe alleges that meetings to plan terrorist activities occurred in Afghanistan, *id.* at 30, 32, and that the Taliban, acting as officials or agents of Afghanistan, provided material support and assistance by allowing Bin Laden and Al Qaeda to "operate training camps inside Afghanistan from which they plan, train for, and carry out terrorist attacks against the United States[.]" (*Id.* ¶¶ 21, 22, 58.)

5. Afghanistan might not be individually liable under Doe's wrongful death claims in the absence of a conspiracy theory. The complaint does not allege tortious actions committed by Afghanistan in the United States. *See Asociacion de Reclamantes v. United Mexican States,* 735 F.2d 1517, 1524 (D.C.Cir. 1984) (noting that the conduct at issue "lacks the required nexus with the United States"). Section 1605(a)(5) "requires that both the tortious act as well as the injury occur in the United States." *Cicippio v. Islamic Republic of Iran,* 30 F.3d 164, 169 (D.C.Cir.1994) (finding that noncommercial tort exception did not apply to kidnappings that occurred in Lebanon); *State of Israel,* 400 F.Supp.2d at 108 (holding that despite plaintiffs' allegations of a conspiracy, they did not suggest that any of

the acts committed by individual defendants occurred in the United States).

Doe claims that "at least four of the nineteen hijackers from the September 11, 2001 attacks received training at camps in Afghanistan run by Bin Laden and Al Queda" (Compl.¶ 21), and that the terrorists have used Afghanistan "as a safe haven and base of operations from which to carry out terrorist attacks on the United States." (*Id.* ¶ 22.) Afghanistan allegedly served as the meeting place for "Iraqi intelligence officials [to meet] with Bin Laden." (*Id.* ¶ 30.) Doe's complaint asserts that all activities conducted by Afghanistan that might have lent support to the attacks in the United States, if any, occurred in Afghanistan. (*Id.* ¶¶ 21, 22, 30, 32, 33, 36, 60.)

(*See also* Pls.' Opp' n at 1 n. 2 (stating that the Taliban was the "entity governing the nation of Afghanistan").) However, Afghanistan states that the Taliban did not have universal diplomatic recognition as the representative government even though the Taliban referred to itself as the Islamic Emirate of Afghanistan and had "partial military control of the nation's territory." (Def.'s Mem. at 3; Def.'s Notice of Filing, Decl. of Enayat Qasimi ¶ 3.) The connection between the Taliban and Afghanistan is a disputed factual issue that affects whether the complaint sufficiently alleges that Afghanistan participated in the conspiracy. *See Foremost–McKesson, Inc.*, 905 F.2d at 448 (noting that sufficient fact finding was necessary to determine whether actions of co-defendants could be attributed to Iran and that the "[d]etermination of 'who is and is not an agent of whom will be in great part factual' " (quoting *Gilson v. Republic of Ireland*, 682 F.2d 1022, 1029 (D.C.Cir.1982))). Evidence of this relationship could support an inference that Afghanistan agreed to provide a sanctuary or resources knowing that Al Qaeda and Bin Laden intended to engage in terrorist activity. *See In re Terrorist Attacks on Sept. 11, 2001*, 349 F.Supp.2d 765, 801 (S.D.N.Y.2005) (stating that conclusory allegations are insufficient for subject matter jurisdiction because "[t]here must be some facts to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer"); *Valore v. Islamic Republic of Iran*, 478 F.Supp.2d 101, 109 (D.D.C.2007) (finding that allegations of providing material support and resources to Hezbollah were supported by the facts showing that the defendants engaged directly in "numerous overt acts[,]" including approving and facilitating the attack). Doe has made factual allegations sufficient to suggest that jurisdiction could be found after limited discovery. *See Intelsat Global Sales &*

*Mktg., Ltd.*, 534 F.Supp.2d at 36. Since Afghanistan has asked to present evidence concerning subject matter jurisdiction if the court determines that the noncommercial tort exception applies (Def.'s Reply at 7 n. 3), limited jurisdictional discovery is warranted.

### CONCLUSION AND ORDER

While § 1605(a)(5) does not preclude Doe from bringing his civil conspiracy claim against Afghanistan, a factual dispute exists that affects the determination of subject matter jurisdiction. Thus, Afghanistan's motion to dismiss will be denied without prejudice to its refiling after the parties have an opportunity to conduct limited discovery. Accordingly, it is hereby

ORDERED that Afghanistan's motion [26] to vacate entry of default and dismiss the complaint be, and hereby is, DENIED without prejudice. It is further

ORDERED that the parties confer and submit by October 31, 2008 a joint report proposing a plan for conducting discovery limited to facts bearing upon the court's subject matter jurisdiction. A proposed order shall accompany the joint report.